1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    HONGDO THI DO,                          No.  2:12-cv-01679-AC

12                    Plaintiff,

13          v.                                ORDER

14    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security,

15

16                    Defendant.

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title

20    XVI of the Social Security Act ("the Act").  The parties' cross-motions for summary judgment

21    are pending.  For the reasons discussed below, the court will deny plaintiff's motion for summary

22    judgment and will grant defendant's motion for summary judgment.

23                               PROCEDURAL BACKGROUND

24          Plaintiff filed an application for SSI on June 6, 2007, alleging disability beginning April

25    10, 1987.  Administrative Record ("AR") 183-86.  Plaintiff's application was initially denied on

26    July 31, 2007, and again upon reconsideration on October 30, 2008.  AR 75-76, 90-94, 108-12.

27    On April 28, 2009, a hearing was held before administrative law judge ("ALJ") William C.

28    Thompson, Jr.  AR 56-74.  Plaintiff appeared with attorney representation at the hearing, at which

1   she and a vocational expert ("VE") testified.  AR 56-74.  In a decision dated August 21, 2009, the

2   ALJ determined that plaintiff was not disabled under 1614(a)(3)(A) of the Act.[1]  AR 80-86.  The

3   ALJ made the following findings (citations to 20 C.F.R. omitted):

4
    > 1.   The claimant has not engaged in substantial gainful activity
    > since June 6, 2007, the application date.
5

6   > 2.  The claimant has the following severe impairments: anemia.

7   > 3.   The claimant does not have an impairment or combination of
    > impairments that meets or medically equals one of the listed
    > impairments in 20 CFR Part 404, Subpart P, Appendix 1.
8

9   > 4.   After careful consideration of the entire record, I find that the
    > claimant has the residual functional capacity to perform the full

10
    _____

11  [1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
    Security program, 42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled
12  persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as
    an "inability to engage in any substantial gainful activity" due to "a medically determinable
13  physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel
    five-step sequential evaluation governs eligibility for benefits under both programs.  See 20
14  C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
    42 (1987).  The following summarizes the sequential evaluation:
15
    > Step one:  Is the claimant engaging in substantial gainful activity?
16  > If so, the claimant is found not disabled.  If not, proceed to step
    > two.
17
    > Step two:  Does the claimant have a "severe" impairment?  If so,
18  > proceed to step three.  If not, then a finding of not disabled is
    > appropriate.
19
    > Step three:   Does the claimant's impairment or combination of
20  > impairments meet or equal an impairment listed in 20 C.F.R., Pt.
    > 404, Subpt. P, App.1?   If so, the claimant is automatically
21  > determined disabled.  If not, proceed to step four.

22  > Step four:  Is the claimant capable of performing his past work?  If
    > so, the claimant is not disabled.  If not, proceed to step five.
23
    > Step five:  Does the claimant have the residual functional capacity
24  > perform any other work?  If so, the claimant is not disabled.  If not,
    > the claimant is disabled.
25

26  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
            The claimant bears the burden of proof in the first four steps of the sequential evaluation
27  process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
    evaluation process proceeds to step five.  Id.
28

1     range of medium work as defined in 20 CFR 416.967(c).

2         5.  The claimant is capable of performing past relevant work as a
          cook/helper.  This work does not require the performance of work-
3         related activities precluded by the claimant's residual functional
          capacity.

4
          6.  The claimant has not been under a disability, as defined in the
5         Social Security Act, since June 6, 2007, the date the application was
          filed.
6
   AR 80-86.
7
        The Appeals Council granted review of the ALJ's decision on March 10, 2010.  AR 87-
8
   89.  After review, the Appeals Council directed the ALJ to:
9
          1.  Obtain additional evidence concerning the claimant's mental
10        impairments in order to complete the administrative record in
          accordance with the regulatory standards regarding consultative
11        examinations and existing medical evidence.   The additional
          evidence may include, if warranted and available, consultative
12        examinations with psychological testing and medical source
          statements about what the claimant can still do despite the
13        impairment.

14        2.  Further evaluate the claimant's subjective complaints and
          provide rationale in accordance with the disability regulations
15        pertaining to evaluation of symptoms.

16        3.  Give further consideration to the claimant's maximum residual
          functional capacity and provide appropriate rationale with specific
17        references to the evidence of record in support of the assessed
          limitations.
18
          4.  In evaluating the evidence at Step 4 of the sequential evaluation
19        process, compare the physical and mental demands of the
          claimant's past relevant work with his maximum residual functional
20        capacity.

21        5.  If warranted, obtain supplemental evidence from a vocational
          expert to clarify the effect of the assessed limitations of the
22        claimant's occupational base.  The hypothetical questions should
          reflect the specific capacity/limitations established by the record as
23        a whole.  The Administrative Law Judge will ask the vocational
          expert to identify examples of appropriate jobs and to state the
24        incidence of such jobs in the national economy.  Further, before
          relying on the vocational expert evidence the Administrative Law
25        Judge will identify and resolve any conflicts between the
          occupational evidence provided by the vocational expert and
26        information in the Dictionary of Occupational Titles (DOT) and its
          companion   publication,   the   Selected   Characteristics   of
27        Occupations.

28   AR 88-89.

                                    3

A second administrative hearing was then held on October 5, 2010.  AR 36-55.  Again, plaintiff was represented by counsel, and she, her son[2], and a VE testified.  AR 36-55.  On December 9, 2010, the ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant has not engaged in substantial gainful activity since June 6, 2007, the application date.
>
> 2.  The claimant has the following severe impairments: a history of hemolytic anemia, in remission, and depression.
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to jobs involving simple, repetitive tasks.
>
> 5.  The claimant is capable of performing past relevant work as a kitchen helper.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 6.  The claimant has not been under a disability, as defined in the Social Security Act, since June 6, 2007, the date the application was filed.

AR 20-30.

Again, plaintiff requested review of the ALJ's decision by the Appeals Council, but the council denied review on May 15, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-3.

## STATEMENT OF THE FACTS

Born on March 30, 1950, plaintiff was 37 years old on the alleged onset date of disability, AR 183, and 60 years old at the time of the second administrative hearing, see AR 36.  Plaintiff completed the 10th or 11th grade in Vietnam and speaks very little English.  AR 25, 40.  She last worked three to four years before the administrative hearing on a lunch truck as a cook's assistant, but was fired because she was forgetful and she fell.  Id.  Plaintiff alleges disability

---

[2] In the December 9, 2010 decision following the second administrative hearing, the ALJ referred to the plaintiff's son as "Phuc Le," but this individual is identified as "Bo Play" in the transcript of the hearing.  Compare AR 20 with AR 46.

4

1    beginning on April 10, 1987.  AR 183.

2                                LEGAL STANDARDS

3         The Commissioner's decision that a claimant is not disabled will be upheld if the findings

4    of fact are supported by substantial evidence in the record and the proper legal standards were

5    applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

6    Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

7    180 F.3d 1094, 1097 (9th Cir. 1999).

8         The findings of the Commissioner as to any fact, if supported by substantial evidence, are

9    conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

10   more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

11   Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

12   conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

13   N.L.R.B., 305 U.S. 197, 229 (1938)).

14        "The ALJ is responsible for determining credibility, resolving conflicts in medical

15   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

16   (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

17   one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

18   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

19                                  ANALYSIS

20        Plaintiff argues that the ALJ erred by (a) failing to comply with the Appeals Council's

21   remand order, (b) improperly rejecting the opinion of plaintiff's treating physician, Dr.

22   Almendarez, (c) rendering an inadequate residual functional capacity ("RFC") finding, and (d)

23   failing to articulate sufficient reasons for not adopting the limitations of examining psychiatrist,

24   Dr. Patricia White.

25   A.      The Appeals Council's Remand Order

26        Plaintiff argues first that the ALJ failed to comply with three aspects of the Appeals

27   Council's remand order.  Pl.'s Mot. for Summ. J. ("Pl.'s MSJ") 15-17.  Plaintiff argues that the

28   ALJ failed to: (1) provide support for his RFC assessment; (2) compare the physical and mental

1  demands of plaintiff's past relevant work to his RFC assessment; and (3) question the vocational

2  expert.  "The administrative law judge shall take any action that is ordered by the Appeals

3  Council and may take any additional action that is not inconsistent with the Appeals Council's

4  remand order."  20 C.F.R. § 416.1477.

5        1.     The ALJ's RFC Assessment

6        Initially, plaintiff contends that the ALJ did not properly comply with the remand order in

7  assessing her RFC.  Generally, an ALJ assesses a claimant's RFC "based on all the relevant

8  evidence" in the record.  20 C.F.R. § 416.945(a)(1).  Additionally, "[t]he RFC assessment must

9  include a narrative discussion describing how the evidence supports each conclusion, citing

10  specific medical facts and nonmedical evidence."  SSR 96-8P.

11        On remand, the Appeals Council directed the ALJ to "provide appropriate rationale with

12  specific references to the evidence of record in support of the assessed limitations."  AR 89.  In

13  turn, the ALJ determined that plaintiff is capable of performing light work[3] and is limited to jobs

14  ―――――――――――――――――

[3] The Commissioner defines "light work" as follows:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs.  A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances).  Relatively few unskilled light jobs are performed in a seated position.

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

(continued…)

involving simple, repetitive tasks.  The ALJ then reviewed the medical record and considered the

testimony of both plaintiff and her son in ultimately concluding the following:

> In sum, the above residual functional capacity assessment is supported by the testimony received at the hearing as well as the medical evidence and source statements in the record. The medical evidence demonstrates that, as a result of her depression, the claimant may have difficulty understanding, remembering, and carrying out complex tasks, but does not show that she is unable to perform simple, repetitive tasks at an acceptable pace. Her anemia, though in remission, still appears to impose some exertional limitations on the claimant.   Therefore, in consideration of claimant's anemia and psychiatric symptoms, I assess limitations consistent with the weight of the evidence.

AR 29-30.

### a.     Physical Impairment

Turning first to plaintiff's physical impairment, the ALJ considered the testimony

provided at the hearing, the medical reports from St. Joseph's Medical Center ("SJMC") prepared

by nurse practitioner M. Abaray ("NP Abaray") and by Dr. T. Pham, and the medical notes of a

state agency psychologist, Dr. David Richwerger.  The ALJ specifically declined to consider the

opinion of Dr. E. Almendarez, who claimed to be plaintiff's treating physician.

### i.     Dr. Almendarez's Opinion

Plaintiff contends that the ALJ's failure to credit the opinion of Dr. Almendarez was in

error.  Dr. Almendarez issued an RFC assessment on April 17, 2009 stating that he had seen

plaintiff every one or two months since August 2007.  AR 28, 310-16.  Dr. Almendarez assessed

plaintiff's residual functional capacity as follows: plaintiff can sit, stand, and walk for four hours

in an eight-hour day; she can occasionally lift up to ten pounds, stoop, crouch, and climb stairs;

she can never climb ladders; plaintiff requires walking breaks every thirty minutes and must be

able to shift positions at will; plaintiff needs a fifteen minute, unscheduled break every two hours,

during which she can recline; plaintiff is sensitive to cold, dust, and chemical smells; and plaintiff

will be absent more than four times per month.  AR 311-316.

---

SSR 83-10, 1983 WL 31251.

1    As noted, the ALJ gave no weight to Dr. Almendarez's opinion because plaintiff's

2    medical records showed that Dr. Almendarez had in fact never examined plaintiff and that,

3    instead, NP Abaray provided primary care services to plaintiff.  AR 28.  Plaintiff refutes this

4    finding, citing to the record in support of her argument that she was seen by Dr. Almendarez

5    multiple times.  As the Commissioner correctly points out, though, none of these medical records

6    show that plaintiff was actually examined by Dr. Almendarez.  See AR 337, 341, 343, and 345.

7    In finding that Dr. Almendarez could not have prepared the RFC assessment since there is

8    no record of him having examined plaintiff, the ALJ determined that the April 17, 2009 RFC

9    assessment was instead prepared by NP Abaray, who examined plaintiff multiple times and

10   whose signature also appears on the RFC assessment.  The ALJ, however, did not give

11   controlling weight to NP Abaray's medical opinion because, coming from a nurse practitioner, it

12   was not an acceptable medical source under 20 CFR 404.1513(a) and 416.913(a).  The

13   regulations differentiate between opinions from "acceptable medical sources" and "other

14   sources."  See 20 C.F.R. §§ 404.1513(a), (d); 416.913(a), (d); see also SSR 06–03p, 2006 WL

15   2329939, at *2 ("only 'acceptable medical sources" can be considered treating sources, as defined

16   in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling

17   weight.").  The ALJ was correct in noting that NP Abaray was not an acceptable medical source.

18   SSR 06–03p (specifying that a nurse practitioner is not an acceptable medical source). Nurse

19   practitioners are specifically classified as "other sources," and their opinions may be accorded

20   less weight than opinions from acceptable medical sources.  Plaintiff counters that, once an

21   impairment is established from an "acceptable medical source," then the Commissioner may

22   consider evidence from "other sources," including nurse practitioners.  But plaintiff does not refer

23   to any other opinions from an "acceptable medical source" that support NP Abaray's medical

24   opinion.

25   Even assuming, however, that NP Abaray's medical opinion should be afforded some

26   weight, the ALJ further found that the RFC assessment was inconsistent with NP Abaray's own

27   medical notes.  See AR 28.  Specifically, the ALJ found that there was no evidence to

28   demonstrate that plaintiff has an impairment that causes sensitivity to environmental factors or

8

1    requires her to recline for portions of the day and change positions frequently.  AR 28.  NP

2    Abaray also offered no objective findings to support her opinion regarding plaintiff's limitations

3    in lifting, sitting, standing, or walking.  Id.  Plaintiff argues that the record is replete with

4    evidence of plaintiff's physical limitations and cites to medical records that document, inter alia, a

5    nodule in the left lobe of plaintiff's thyroid, AR 311; stomach upset caused by medication, AR

6    312; benign endometrial epithelial cells, AR 297-300; a calcified fibroid in her uterus, AR 371;

7    and headache, inability to sleep, and dry cough, AR 340.  But none of the records to which

8    plaintiff cites support NP Abaray's RFC assessment that plaintiff, for example, is sensitive to

9    cold, dust, and chemical smells or that she can occasionally lift up to ten pounds, stoop, crouch,

10   and climb stairs.  In light of the above, the court concludes that the ALJ properly gave NP

11   Abaray's opinion minimal weight.

12                              ii.      The ALJ's Rationale

13           The court further finds that, in the context of plaintiff's physical impairment, the ALJ

14   complied adequately with the Appeals Council's directive that he "provide appropriate rationale

15   with specific references to the evidence of record in support of the assessed limitations."  For

16   example, in discrediting plaintiff's allegations that she is extremely dizzy, has difficulty walking

17   without assistance, and falls frequently, the ALJ stated as follows:

18                   Although the claimant may experience dizziness, her treatment
                     providers have never noted any difficulty with ambulation.  She has
19                   not mentioned dizziness or trouble with balance to her current
                     primary care physician, who describes her as basically healthy.  Dr.
20                   Richwerger, who examined her in June 2010, indicated that her gait
                     was slow, but not that she had difficulty walking unassisted.  Dr.
21                   White is the only source who has ever commented on her inability
                     to maintain balance.  In addition, although the claimant stated in
22                   July 2007 that she was unable to walk unassisted, she told Ms.
                     Abaray in January 2009 that she walked for five to 10 minutes two
23                   or three times a day.  Similarly, she indicated to her current primary
                     care provider that she is attempting to maintain her activity level to
24                   lose weight; she told Dr. Richwerger that she was able to leave her
                     house alone.  Taken together, the claimant's conflicting statements
25                   regarding her ability to walk without assistance, and her failure to
                     complain to any doctor about this problem suggest that it is neither
26                   as severe nor as limiting as she claims.

27   AR 27.  The ALJ similarly provided appropriate rationale with specific references to the record in

28   assessing plaintiff's allegations of memory problems.  See id. 27-29.  For these reasons, the court

                                            9

1    rejects plaintiff's argument that the ALJ failed to comply with the Appeals Council's directive as

2    related to her physical impairment and further finds substantial evidence in the record to support

3    the ALJ's RFC assessment as to plaintiff's physical limitation.

4                   b.      Mental Impairment

5           As to plaintiff's mental impairment, the ALJ considered the opinions of Dr. Richwerger,

6    the state agency psychologist who examined plaintiff on June 15, 2010; Dr. Patricia White, who

7    examined plaintiff on April 20, 2009 at plaintiff's attorney's request; and Dr. Almendarez.

8                        i.       Dr. White's Opinion

9           Dr. White examined plaintiff on April 20, 2009 following referral from plaintiff's

10   attorneys and for the purpose of supporting plaintiff's SSI application. AR 318-20. Dr. White

11   examined plaintiff the one time and found her to be "sad-looking, withdrawn, avoiding direct eye

12   contact." AR 319. Following the examination, Dr. White concluded that plaintiff "is genuinely

13   depressed to a serious degree and I am hopeful that she will respond to the use of Prozac. . . . As

14   [plaintiff] is presently functioning, I conclude that by reason of combined mental and physical

15   impairments she is precluded from substantial gainful activity at this time." AR 320. Dr. White

16   then issued an assessment of plaintiff's RFC. AR 321-25. Dr. White opined that plaintiff was

17   moderately limited in her ability to understand, remember, and carry out simple instructions,

18   interact with the general public, get along with coworkers or peers, and respond appropriately to

19   changes in the work setting. AR 321-325. Dr. White further opined that plaintiff had marked

20   limitations in her ability to maintain attention and concentration, perform activities within a

21   schedule, sustain an ordinary routine, and complete a normal workday or workweek. Id.

22          The ALJ rejected Dr. White's opinion as follows:

23                  Although Dr. White examined the claimant, her opinion is not
                    entirely consistent with the medical evidence of record and she did
24                  not offer objective findings to support that opinion. The majority of
                    her examination report consists of statements regarding the
25                  claimant's subjective complaints. Dr. White observed only that the
                    claimant appeared sad and withdrawn but understood the questions
26                  posed to her and was able to respond appropriately. This does not
                    correspond with the extreme functional limitations she found the
27                  claimant to have. Further, whether an individual is capable of
                    working is an administrative conclusion that is reserved to the
28                  Commissioner. [Citations omitted.] Therefore, I give no weight to

                                               10

1

2

> Dr. White's opinion regarding the claimant's ability to perform substantial gainful activity and little probative weight to the remainder of her opinion.

3 AR 29.

4        Plaintiff argues that the ALJ erred in failing to credit the opinion of Dr. White, a

5 consultative psychiatrist.  When an examining physician's opinion is not contradicted by another

6 physician, then it may only be rejected for "clear and convincing" reasons.  Lester, 81 F.3d at

7 830.  When the opinion is contradicted by another doctor, the opinion of an examining doctor can

8 be rejected only for specific and legitimate reasons.  Id.  In this case, plaintiff contends that the

9 ALJ failed to give either clear and convincing reasons or specific and legitimate reasons to reject

10 Dr. White's opinion, which plaintiff claims was supported both by Dr. White's own clinical

11 observations and by the medical record.

12        Plaintiff first challenges the ALJ's determination that Dr. White's opinion was based

13 primarily on plaintiff's subjective complaints.  Plaintiff asserts that Dr. White's opinion was

14 instead supported by her own clinical observations, which plaintiff properly notes can provide a

15 basis for a medical opinion.  See Sanchez v. Apfel, 85 F. Supp. 2d 986, 992 (C.D. Cal. 2000)

16 (when mental illness is basis of disability claim, clinical and laboratory data may consist of

17 diagnoses and observations of professionals trained in field of psychopathology); see also

18 Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion that is based on clinical

19 observations supporting diagnosis of depression is competent psychiatric evidence).  In this case,

20 Dr. White observed plaintiff to be "very quiet-spoken, showing almost no emotional animation,

21 sad-looking, withdrawn, avoiding direct eye contact."  AR 319.  She also noticed that plaintiff

22 appeared to have difficulty keeping her balance when walking.  Id.  Lastly, she noted that

23 although plaintiff "seemed to comprehend the questions put to her" and her "replies were relevant

24 and coherent," the replies were also "brief and poorly elaborated."  Id.  While the court accepts

25 that Dr. White's opinion was based in part on her clinical observations (in addition to plaintiff's

26 subjective complaints[4]), the undersigned is unconvinced that these observations provide a

27

28

[4] The court rejects plaintiff's characterization of the following portions of Dr. White's notes as (continued…)

11

1  sufficient foundation for Dr. White's opinion regarding plaintiff's functional limitations.

2  Moreover, the ALJ found it relevant to note that Dr. White's opinion was obtained at the request

3  of plaintiff's attorney for the purpose of supporting plaintiff's SSI application.  See AR 26.  To

4  the extent the ALJ found this relevant in assessing Dr. White's credibility, this was entirely

5  proper.  See Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996).

6       As to the medical record, the ALJ was correct that Dr. White failed to support her opinion

7  with citation to specific portions of the record.  Dr. White did, however, generally list the records

8  she reviewed in assessing plaintiff's mental impairment, which included medical records

9  indicating that plaintiff suffers from chronic hemolytic anemia, which was stable at the time of

10 the report; medical records indicating that plaintiff has been treated for minor physical problems

11 (tonsillitis, constipation, vaginal discharge, gastritis); medical records from SJGH indicating that

12 since 2008 plaintiff had been prescribed medication in low dose for insomnia and medication for

13 chronic headaches; and an April 2009 medical note indicating that plaintiff had been prescribed

14 Prozac for depression.  AR 318.  Plaintiff argues that this mental health evidence supports Dr.

15 White's opinion.  The court disagrees.  None of these records support Dr. White's opinion that

16 plaintiff is moderately limited in her ability to understand, remember, and carry out simple

17 instructions, interact with the general public, get along with coworkers or peers, and respond

18 appropriately to changes in the work setting, or that plaintiff has marked limitations in her ability

19 to maintain attention and concentration, perform activities within a schedule, sustain an ordinary

20 routine, and complete a normal workday or workweek.  Accordingly, the court finds that the

21 ALJ's failure to credit Dr. White's opinion is supported by substantial evidence and therefore was

22 not in error.

23            ii.    The ALJ's Rationale

24       The ALJ then considered the opinions of Dr. Almendarez and Dr. Richwerger in assessing

25 plaintiff's mental impairment.  As to Dr. Almendarez, the ALJ again found, as in the context of

26 _____

27 evidence of the doctor's clinical observations as opposed to plaintiff's subjective complaints:
   "[Plaintiff] feels useless and worthless because of her inability to work. She often feels that she
   would be better off dead but has not tried to harm herself."  See Pl.'s MSJ at 24; AR 319.

28

plaintiff's physical impairment, that Dr. Almendarez did not examine plaintiff and therefore could not have provided an accurate assessment of her.  As before, the ALJ concluded not only that the opinion was provided by RN Abaray, but also that it was not consistent with the medical evidence regarding plaintiff's mental impairment.  For example, treatment notes dated April 16, 2009 following RN Abaray's examination of plaintiff reflect a diagnosis of somatoform disorder, but it is unclear on what RN Abaray relied in reaching this conclusion.  See AR 331.  Moreover, the ALJ found that the RFC assessment purportedly prepared by Dr. Almendarez did not offer objective findings to support the conclusions offered.[5]  AR 29.  Lastly, the ALJ rejected the RFC assessment as to plaintiff's mental impairment because neither Dr. Almendarez nor RN Abaray are mental health professionals.  See 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Dr. Richwerger is a State Agency psychologist who examined plaintiff on June 15, 2010. See AR 348-56.  The ALJ accurately summarized Dr. Richwerger's examination and findings as follows:

> The claimant complained of depression, tiredness, dizziness, nightmares, forgetfulness, and thoughts of death.  She stated that she began outpatient treatment for her depression in 2009 and does not remember when her last visit was. She is no longer taking antidepressants.  She has trouble sleeping and a poor appetite. Although she does not do chores, she can dress and bathe herself and go out alone.  Dr. Richwerger noted that the claimant was alert and oriented to place and person. She walked slowly and her verbal responses were occasionally delayed.  She appeared somewhat frustrated and irritable, although her thought process was rational. The claimant responded only minimally to memory and intelligence testing and Dr. Richwerger found the results of these tests not valid. Based on this examination, he determined that depressive disorder, not elsewhere specified could not be ruled out.[6] If the results of the testing were considered valid, he would diagnose the claimant with

---

[5] The record does, however, reflect plaintiff's subjective complaints of depression and a prescription for Prozac, which plaintiff reported to be helpful.  AR 335, 338.

[6] Dr. Richwerger's diagnostic impression of plaintiff at Axis I reads "Rule out depressive disorder, not elsewhere specific," which contradicts the ALJ's summary that Dr. Richwerger determined that a depressive disorder could *not* be ruled out.  See AR 354.  The ALJ's interpretation of Dr. Richwerger's notes, then, is more favorable than Dr. Richwerger intended.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

a cognitive disorder, not elsewhere specific, with moderate to severe deficits.

AR 27.

In declining to give any weight to Dr. Richwerger's opinion, the ALJ stated:

> Dr. Richwerger determined that he was unable to provide an opinion regarding the claimant's functional limitations because the results of the testing were not valid. If the testing had been valid, he opined that the claimant would have a marked impairment even in her ability to perform simple, repetitive tasks and would be unable to handle her own funds.  Dr. Richwerger examined the claimant and noted that she did not put forth good effort on testing activities. He determined that the results of these tests were not valid and did not offer reliable information about the claimant's ability to function.

AR 29.

The ALJ then concluded that the medical evidence and source statements in the record demonstrate that, "as a result of her depression, the claimant may have difficulty understanding, remembering, and carrying out complex tasks, but does not show that she is unable to perform simple, repetitive tasks at an acceptable pace."  AR 29.  The court finds this determination to be well-reasoned and supported by the record.  Accordingly, the court rejects plaintiff's argument that the ALJ failed to comply with the Appeals Council's directive as related to her mental impairment and further finds substantial evidence in the record to support the ALJ's RFC assessment as to plaintiff's mental limitation.

2.      Plaintiff's Past Relevant Work

Plaintiff's next argues that the ALJ did not properly compare the physical and mental demands of her past relevant work with the ALJ's RFC assessment.  Pl.'s MSJ 19-20.  See AR 20.  Plaintiff argues that the ALJ "completely failed to discuss" the mental demands of plaintiff's past work, thereby failing to make specific findings.  Pl's MSJ 19.

Claimants will be found "not disabled" if their RFC allows them to perform the physical and mental demands and job duties of a past job or the demands and duties as generally required in the national economy.  See SSR 82-61, 82-62.  This "requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work."  Pinto v. Massanari,

14

1   249 F.3d 840, 844-45 (9th Cir. 2001).  Although the claimant has the burden of proof at step four

2   of the evaluation process, 20 C.F.R. § 416.920(e), the ALJ must make factual findings to support

3   a conclusion of whether a plaintiff can perform past work, see Pinto, 249 F.3d at 844.

4        Following consideration of testimony provided by the VE, the ALJ determined that

5   plaintiff is capable of performing her past relevant work:

> The vocational expert classified the claimant's past relevant work
> as kitchen helper (318.687-010, medium, SVP 2; light as performed
> by claimant).  The claimant retains the residual functional capacity
> for light, unskilled work; therefore, I find that in comparing the
> claimant's residual functional capacity with the physical and mental
> demands of this work, she is able to perform it as she performed it.
> The mental demands of this work at svp-2 are within the mental
> residual functional capacity found herein.

AR 30.

> Plaintiff's past relevant work as a kitchen helper is described by the Dictionary of

Occupational Titles ("DOT") as follows:

> Performs any combination of following duties to maintain kitchen
> work areas and restaurant equipment and utensils in clean and
> orderly condition: Sweeps and mops floors. Washes worktables,
> walls, refrigerators, and meat blocks. Segregates and removes trash
> and garbage and places it in designated containers. Steam-cleans or
> hoses-out garbage cans. Sorts bottles, and breaks disposable ones in
> bottle-crushing machine. Washes pots, pans, and trays by hand.
> Scrapes food from dirty dishes and washes them by hand or places
> them in racks or on conveyor to dishwashing machine. Polishes
> silver, using burnishing-machine tumbler, chemical dip, buffing
> wheel, and hand cloth. Holds inverted glasses over revolving
> brushes to clean inside surfaces. Transfers supplies and equipment
> between storage and work areas by hand or by use of handtruck.
> Sets up banquet tables. Washes and peels vegetables, using knife or
> peeling machine. Loads or unloads trucks picking up or delivering
> supplies and food.

DOT 318.687–010.

In his RFC determination, the ALJ found plaintiff's only mental limitation to be that she

was "limited to jobs involving simple, repetitive tasks."  AR 25.  The ALJ classified plaintiff's

past work as unskilled work, i.e., work that "needs little or no judgment to do simple duties that

can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  As to the mental

1  demands of plaintiff's past work, the ALJ cited the VE's testimony that the work had a specific

2  vocational preparation ("SVP") time of 2.[7]  AR 30.  The ALJ then found that the mental demands

3  of plaintiff's past work were within her RFC.  There is no error on this ground.  See Lopez v.

4  Astrue, 2011 WL 3206958, at *8 (N.D. Cal., July 27, 2011) (stating that "a limitation to simple,

5  routine, repetitive work is not inconsistent with the ability to perform unskilled work"); Cha Yang

6  v. Astrue, 2010 WL 3768122, *14 (E.D. Cal., Sept. 22, 2010) (stating that "the ability to perform

7  simple, repetitive tasks is consistent with unskilled work); and Orucevic v. Astrue, 2008 WL

8  4621420, *7 (W.D. Wash., Oct. 16, 2008) (finding no error in the ALJ's conclusion that plaintiff

9  could perform unskilled work because of her limitation to simple, repetitive tasks and noting that

10  the definition of unskilled work [20 C.F.R. § 416.968(a) ] describes repetitive tasks as the primary

11  work duty).  See also Meissl v. Barnhart, 403 F. Supp. 2d 981, 983-85 (C.D. Cal. 2005)

12  (reasoning SVP 2 did not conflict with the ALJ's prescribed limitation of work which involved

13  "simple, repetitive" tasks).  Accordingly, the court finds that the ALJ properly compared the

14  physical and mental demands of plaintiff's past relevant work to the RFC assessment.

15      3.    Supplemental Evidence from the VE

16       Lastly, plaintiff contends that the ALJ failed to obtain supplemental evidence from the VE

17  to clarify the effect her limitations had on hypothetical employment and posed no hypothetical

18  questions to the VE, in violation of the Appeals Council order.

19      A VE is helpful, and sometimes necessary, in determining a "particular additional

20  exertional or nonexertional limitation."  SSR 83-14.  A vocational expert or other specialist may

21

22  [7] SVP is a term of art used in the DOT to classify "how long it generally takes to learn the job."

23  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (emphasis added).  The regulations contain definitions for the skill requirements for particular jobs, which are classified as "unskilled,"

24  "semi-skilled," and "skilled."  "Using the skill level definitions in [20 C.F.R. § § 404.1568] and 416.968, unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP

25  of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT ."  Soc. Sec. Ruling 00–4p. An SVP level of 1 consists of unskilled jobs that can be learned after a short demonstration only,

26  while an SVP level of 2 are those jobs that require "[a]nything beyond short demonstration up to and including 1 month."  20 C.F.R. § 404.1568(a); see also DOT, App'x C, "Components of the

27  Definition Trailer" (4th ed.1991) (emphasis added); Terry, 903 F.2d at 1276 (holding that unskilled jobs are those that have an SVP of 30 days or less).

28

1   be used in determining if there are a significant number of appropriate jobs, and their incidence in

2   the national economy.  20 C.F.R. § 416.966.   The ALJ must solicit a reasonable explanation for

3   any conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT).  SSR

4   00-4p.  But, a claimant will be found not disabled if they can do their past relevant work, making

5   further inquiry unnecessary.  See 20 C.F.R. § 416.920.

6          Because the ALJ found plaintiff could perform her past relevant work, further

7   hypothetical questions to the VE were not warranted.  Since the Appeals Council's remand order

8   directed that the VE need be questioned only "if warranted," AR 89, the undersigned finds that

9   the ALJ did not err in failing to further question the VE.

10   B.      Plaintiff's "Moderate Difficulties" with Concentration, Persistence, or Pace

11          Plaintiff next argues that the ALJ erred in finding that she was able to perform simple,

12   repetitive tasks in light of his additional finding that she maintained "moderate difficulties" with

13   regard to concentration, persistence, or pace.  The ALJ made this latter finding at step two of the

14   sequential analysis to determine whether plaintiff's mental impairment meets or medically equals

15   the criteria of listing 12.04.  Specifically, the ALJ found that

16          With regard to concentration, persistence or pace, the claimant has
            moderate difficulties.  The claimant has some difficulties with her
17          concentration. She is able to respond appropriately to questions, but
            is somewhat slow to do so. Her son testified that she sometimes
18          seems to stop paying attention to things that are happening around
            her. For these reasons, she has moderate limitations in her ability to
19          maintain attention and concentration.

20   AR 24.[8]

21          "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

22   Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify claimants

23   whose medical impairment is so slight that it is unlikely they would be disabled even if age,

24   education, and experience were taken into account.  Bowen, 482 U.S. at 153.  At step two of the

25   sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe"

26

27   [8] The court rejects plaintiff's argument that the ALJ failed to fully account for his finding of
    moderate limitations with regard to concentration, persistence or pace.

28

1   within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a

2   slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect

3   on the ability to do basic work activities.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)

4   (quoting SSR 96-3p (1996)).

5          The Commissioner argues that the ALJ did not need to consider his finding of moderate

6   difficulties with respect to concentration, persistence or pace when assessing plaintiff's RFC.  In

7   support, the Commissioner relies on Hoopai v. Astrue, 499 F.3d 1071 (9th Cir. 2007), where the

8   Ninth Circuit explained that the ALJ need not include the limitations used in determining whether

9   a mental impairment is severe at a step two of the analysis in determining a claimant's RFC

10  finding at step five of the analysis.[9]  As the Hoopai court held, the step two severity determination

11  is "merely a threshold determination of whether the claimant is able to perform his past work.

12  Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability."

13  Id.  Courts in this circuit have applied Hoopai to hold that an ALJ does not err in declining to

14  apply a step two determination to a later step in the analysis.  See, e.g., Patrick v. Astrue, 2013

15  WL 2146443, at *28 (D. Or. 2013); Molina v. Astrue, 2012 WL 3656368, at *1 n.1 (C.D. Cal.

16  _____

17  [9] At step five, the burden of proof shifts to the agency to demonstrate that the claimant can
    perform a significant number of other jobs in the national economy.  See Hoopai, 499 F.3d at
18  1074.  "This step-five determination is made on the basis of four factors: the claimant's residual
    functional capacity, age, work experience and education."  Id.  The Social Security
19  Administration established the Medical–Vocational Guidelines ("GRIDS") to assist in the step-
    five determination.  Id.  The GRIDS is a matrix of the four factors described above and specific
20  rules that identify whether jobs requiring a specific combination of those factors exist in
    significant numbers in the national economy.  Id.  If the GRIDS match claimant's qualifications,
21  the guidelines show whether jobs exist that claimant could perform.  Id.  On the other hand, if
    GRIDS do not match claimant's qualification, the ALJ can either (1) use the GRIDS as a
22  framework and determine what work exists that claimant can perform or (2) rely on a vocational
23  expert if the claimant has significant non-exertional limitations.
           "The ALJ can use the grids without vocational expert testimony when a non-exertional
24  limitation is alleged because the grids 'provide for the evaluation of claimants asserting both
    exertional and non-exertional limitations.'"  Hoopai, 499 F.3d at 1074.  "The step two and step
25  five determinations require different levels of severity of limitations such that the satisfaction of
    the requirements at step two does not automatically lead to the conclusion that the claimant has
26  satisfied the requirements at step five."  Id. 1075.  At step five, "a vocational expert is required
27  only when there are significant and 'sufficiently severe' non-exertional limitations not accounted
    for in the grid."  Id.

28

1    2012); Kolvick v. Astrue, 2011 WL 4626014, at *3-4 (W.D. Wash. 2011); Marulli v. Astrue,

2    2010 WL 3894612, at *3 (S.D. Cal. 2010) (applying Hoopai to a step-four analysis after finding

3    that the RFC determinations are relevant in both step-four and step-five determinations).

4         Plaintiff argues that Hoopai is inapplicable because the ALJ failed to first articulate

5    reasons for his own RFC finding.  As stated supra, however, the court finds that the ALJ's

6    explanation of his RFC assessment was supported by substantial evidence.

7         Plaintiff then cites to several out-of-circuit cases to argue that a finding at step two of the

8    analysis must be included in an RFC assessment.  See, e.g., Stewart v. Astrue, 561 F.3d 679, 684-

9    85 (7th Cir. 2009); Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176 (11th Cir. 2011) (concluding

10   that a hypothetical should either explicitly include or implicitly account for limitations in

11   concentration, persistence, and pace identified during the step two and three analysis).  But none

12   of these cases are dispositive or even persuasive in light of the reasoning of Hoopai.  While

13   plaintiff also relies on a Ninth Circuit case in support, Thomas v. Barnhart, 278 F.3d 947, 956

14   (9th Cir. 2002), that case merely stood for the proposition that a VE must credit the opinion of a

15   medical expert who had just testified that the claimant had deficiencies in concentration,

16   persistence, or pace.  The facts of that case are distinguishable from the one at hand.

17        But even assuming that the ALJ erred, the error was harmless because "moderate mental

18   functional limitations – specifically limitations in social functioning and adaptation – are not per

19   se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks."

20   McLain v. Astrue, 2011 WL 2174895, at *6 (C.D. Cal. 2011) (citing Rogers v. Comm'r of Soc.

21   Sec., 2011 WL 445047, at *11-*12 (E.D. Cal. Jan.25, 2011) (residual functional capacity

22   assessment that limits claimant to simple, repetitive tasks adequately accounts for moderate

23   limitations in social functioning)).  See also Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir.

24   2005).  Thus, the court finds no error on this ground.

25                                        CONCLUSION

26        Because the undersigned finds no error in the ALJ's reasoning and analysis, IT IS

27   ORDERED that:

28        1.  Plaintiff's motion for summary judgment is denied; and

1   2.  The Commissioner's cross-motion for summary judgment is granted.

2   3.  The Clerk is directed to enter judgment in defendant's favor.

3 DATED: August 23, 2013

4

5          ALLISON CLAIRE
           UNITED STATES MAGISTRATE JUDGE

6

7

8

9 /mb;do1679.ss

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28